UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-20987-CIV-COOKE/GOODMAN

TIMOTHY W. WEBER,

    Plaintiff,

v.

CARNIVAL CORP.,

    Defendant.

_____/

**ORDER ON PLAINTIFF'S SPOLIATION SANCTIONS MOTION**

Plaintiff Timothy Weber filed this lawsuit against Defendant Carnival Corporation because he was injured while attempting to sit in a chair which collapsed under him when he was a passenger aboard the Carnival *Freedom*. Weber sprained his ankle and claims to be suffering from complex regional pain syndrome as a result of this incident. Weber filed a motion for spoliation sanctions because Carnival did not preserve the chair after it was removed from service. [ECF No. 36].

Although it is Carnival's policy to preserve items involved in passenger incidents, it says there appears to have been a "disconnect" between the security team and the housekeeping team. Weber wants either (1) entry of a default judgment; (2) an Order entitling him to an adverse inference at trial (that the chair would be evidence favoring Weber and adverse to Carnival); (3) an Order excluding or limiting testimony; (4) to have

the jury consider evidence of spoliation; and/or (5) to introduce evidence at trial concerning the pre-suit loss and/or destruction of the specific chair.

The Undersigned **denies** Weber's motion because he has not established the requisite bad faith for spoliation sanctions and because he has not demonstrated that the missing chair is crucial to his ability to prove a *prima facie* case. However, the Court will permit **both** sides to introduce **evidence** of the **circumstances** surrounding the chair's absence as a trial exhibit, including initial correspondence (albeit a generic form letter which does not mention a chair) asking Carnival to "maintain and preserve the *area and materials* involved in the incident." (emphasis added).

**FACTUAL AND PROCEDURAL BACKGROUND**

Weber claims he was injured on July 16, 2019 while attempting to sit in a chair which collapsed underneath him. He went to the on-board medical center, where x-rays revealed no fracture but he was diagnosed with having a sprained ankle. There is no evidence that Weber asked anyone on the ship to save the chair for litigation purposes.

On August 22, 2019, Plaintiff's counsel sent a letter of representation to Carnival. [ECF No. 36-2]. The letter is generic and contains several mistakes. It did not provide any facts or circumstances surrounding the incident, nor did it identify the area of the incident. Significantly, the letter did not mention a **chair** or the fact that Weber was injured when a chair collapsed. Instead, it said merely that counsel represents Weber (misspelled "Webber") "for injuries sustained as a result of an *incident* occurring on or

2


about July 16, 2019 aboard the CCL *Miracle*." *Id.* (emphasis added). [Weber was actually a passenger on the *Freedom*, a different ship].

Concerning efforts to avoid spoliation, the letter said:

We request that you maintain and preserve the area and materials involved in the incident so that we may inspect the same. Do not change or alter the area and *materials* involved in the incident. Be advised that any such alterations may constitute spoliation of evidence, which will necessitate appropriate legal action."

*Id.* (emphasis supplied).

The letter also requested copies of the client's passenger injury statement and medical records for *her* treatment aboard the vessel." *Id.* (emphasis added).

The chair in question is no longer available. Carnival does not dispute that the chair existed and that it had a duty to preserve the chair following Weber's incident.

Carnival's corporate representative provided the following testimony (listed below in summary form) in her Rule 30(b)(6) deposition:

Following the incident, Plaintiff reported to the ship's medical center where it was suspected Plaintiff had a fracture. Corp. Rep. Dep. Tr. p. 14:8-13. Because the medical center staff believed Plaintiff required treatment beyond first aid, the accident reporting criteria was triggered, and the incident was reported to the ship's security team. Corp. Rep. Dep. Tr. p. 17:13-21. An investigation was conducted by the Security Officer and Assistant Chief Security Officer onboard. Corp. Rep. Dep. Tr. p. 15:17-18. During the investigation, the housekeeping supervisor removed the subject chair from service after it was determined that the aluminum legs of the chair had buckled under Plaintiff's weight. Corp. Rep. Dep. Tr. p. 19:10-13. This type of chair cannot be repaired, so it is customary for the chairs to be removed from service once they are damaged and are later discarded. Corp. Rep. Dep. Tr. p. 19: 18-21.

> Although it is Carnival's policy to preserve items involved in passenger incidents, it appears that there was a disconnect between the security team and the housekeeping team where no instructions were given to preserve the chair. Corp. Rep. Dep. Tr. p. 20:1-13. It is likely that the disconnect occurred because, after the fact, they learned it was just a sprain and would not have met the reporting criteria triggering preservation. Corp. Rep. Dep. Tr. p. 20:13-16.

[ECF No. 36-4].

According to this deposition testimony, Carnival believes that the chair was placed in the housekeeping locker, but Carnival lost track of it after the cruise. *Id.* at pp. 19-21. More specifically, she testified that Carnival employees spoke with others and "identified" that the chair had been put away and taken out of service -- "but they did not take the steps to actually secure it, wrap it, put it in a box and ship it to the home office as evidence, potential evidence in the case." *Id.* at p. 22.

In an effort to ameliorate any prejudice to Plaintiff, Carnival waived its attorney-client privilege and work product protection by providing Plaintiff with photographs of the chair taken following the incident. In addition, Carnival provided two exemplar chairs from the Carnival *Freedom* to Plaintiff and his expert for inspection. The exemplar chairs are the same make and model and from the same manufacturer as the chair involved in Weber's incident.

According to Carnival's corporate representative, this type of chair is made of aluminum and cannot be repaired. Therefore, Carnival says, the subject chair, if it had been preserved, would not have revealed any previous repairs.

**APPLICABLE LEGAL PRINCIPLES AND ANALYSIS**

"Spoliation is a destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Gaff v. Baja Marine Corp.*, 310 Fed Appx. 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)); *see also Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (explaining that spoliation is "the destruction of evidence or the significant and meaningful alteration of a document or instrument.") (internal quotation marks omitted).

Because spoliation sanctions constitute an evidentiary matter, federal law governs their imposition. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005); *see Martinez v. Brink's, Inc.*, 171 Fed Appx. 263, 268 n.7 (11th Cir. 2006) (holding that federal law governs the imposition of spoliation sanctions in a case premised on federal question jurisdiction); *In Matter of Complaint of Boston Boat III, L.L.C.*, 310 F.R.D. 510, 513-14 (S.D. Fla. 2015) (same).

A district court has "broad discretion" to impose sanctions for spoliation, which is derived "from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury*, 427 F.3d at 944.

In this Circuit, sanctions for spoliation of evidence may include: "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation which raises a resumption against the spoliator." *Id*. at 945. "The adverse inference makes a finding or imposes a rebuttable presumption that the missing evidence would have been

5

unfavorable to the party engaging in the misconduct." *Fed. Trade Comm'n v. First Universal Lending, LLC*, 773 F. Supp. 2d 1332, 1352 (S.D. Fla. 2011).

> To establish spoliation, the party seeking sanctions must prove several things: first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense.

*Doe v. Miami-Dade County*, 797 F. Supp. 2d 1296, 1303 (S.D. Fla. 2011); *see QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 280 F.R.D. 694, 696 (S.D. Fla. 2012).

A jury instruction on spoliation of evidence is required "only when the absence of that evidence is predicated on bad faith." *Cox v. Target Corp.*, 351 Fed. Appx. 381, 383 (11th Cir. 2009).

> [W]here no direct evidence of bad intent exists, in this Circuit, bad faith may be found on circumstantial evidence where all of the following hallmarks are present: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Fed. Trade Comm'n*, 773 F. Supp. 2d at 1353-54; *see also Boston Boat III, L.L.C.*, 310 F.R.D. at 520.

The Eleventh Circuit's decision in *Flury* involved a plaintiff who sought enhanced injuries that he claimed to have suffered due to a manufacturing defect in his vehicle's airbag system. 427 F.3d at 940. A jury awarded the plaintiff $250,000 in enhanced injury

6

damages. *Id*. at 943. The defendant appealed on several grounds, including that the district court failed to impose meaningful sanctions for spoliation of the subject vehicle. *Id*. The plaintiff failed to preserve the allegedly defective vehicle and allowed the vehicle to be sold for salvage, despite a request from the defendant for the vehicle's location. *Id*. The district court ordered that an adverse inference instruction would be an adequate remedy to cure the prejudice to the defendant. *Id*. at 942.

In reversing the district court's ruling for failing to impose meaningful sanctions for the plaintiff's spoliation of critical evidence, the Eleventh Circuit found that the adverse inference instruction was insufficient to cure the prejudice. *Id*. at 946. "We cannot imagine a case in which the evidence destroyed would prove more critical. The resulting prejudice to defendant is incurable by any sanction other than dismissal." *Id.* at 947. In so ruling, the Eleventh Circuit stated that the case "hinges upon the significance of the evidence destroyed, and upon the extreme prejudice the defendant suffered as a result." *Id*. at 943.

<u>Did Carnival Act in Bad Faith?</u>

The Undersigned finds that Carnival's failure to preserve the chair was not the result of bad faith. Instead, it was caused by negligence.

First, the letter which Plaintiff says put Carnival on notice of its obligation to preserve the chair is problematic. It gives the wrong vessel and does not even mention, let alone suggest, that it is a chair which needs to be preserved. Instead, the letter, which appears to be

7

a form letter sent out by Plaintiff's counsel in all cruise ship personal injury cases, mentions a need to preserve the "materials" involved in the "incident." Moreover, Plaintiff did not himself request that the chair be preserved while he was still aboard the ship.

Second, there is no evidence that Carnival purposely discarded the chair in order to destroy or hide evidence in a run-of-the-mill injury case involving a sprained ankle. In fact, Carnival acknowledges its duty to preserve the chair and candidly admits its oversight in not accomplishing that goal.

Third, the evidence demonstrates a legitimate reason for removing the chair from service: it could not be repaired, and Carnival wanted to avoid a scenario where the chair caused another injury.

These circumstances do not generate the requisite bad faith. *See generally Tesoriero v. Carnival Corporation,* 965 F.3d 1170 (11th Cir. 2020) (affirming summary judgment in favor of cruise line; no sanctions warranted when cruise ship owner discarded chair which collapsed under plaintiff in her stateroom because it could not be repaired).

<div align="center">Has Plaintiff Been Prejudiced?</div>

Even if Plaintiff had established Carnival's bad faith (which he has not), a decision to not impose sanctions for spoliation "would still be appropriate if the practical importance of the evidence was minimal." *Tesoriero,* 965 F.3d at 1184 (internal quotations omitted); *see also Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (no spoliation claim under Florida law without a "significant impairment in the ability to prove the lawsuit."); *Walter v. Carnival Corp.*, No. 09-20962-CIV, 2010 WL 2927962, at *2

(S.D. Fla. July 23, 2010) (evidence must be "crucial to the movant being able to prove its prima facie case or defense" to establish spoliation).

Given the similarity between the fact pattern here and the one in *Tesoriero,* it is appropriate to quote the *Tesoriero* Court's analysis of the prejudice factor:

> Here, even if the chair had been preserved, it is **not clear what evidence of Carnival's notice could be deduced from the already-broken piece of furniture.** [The plaintiff] testified that there was no outwardly visible defect, [plaintiff] herself noticed no problem when she moved the chair back from the vanity, and the photographic evidence confirms that the peg-and-hole assembly—as well as the state of the glue holding it together—would have been obscured before the accident. In light of the evidence, and given [plaintiff's] failure to avail herself of Carnival's offer to inspect an identical unbroken cabin chair from the *Splendor*, we are unpersuaded that her ability to inspect the broken chair would have been **so important** to the notice issue as to warrant sanctions.

*Id.* at 1187 (emphasis added).

A movant must show that spoliated evidence is crucial to the movant being able to prove its *prima facie* case. *Managed Care Sols., Inc. v. Essent Healthcare, Inc.,* 736 F. Supp. 2d 1317, 1327 (S.D. Fla. 2010); *Walter* 2010 WL 2927962, at *2. It is not enough that the spoliated evidence would have been relevant to a claim or defense. *See Floeter v. City of Orlando,* No. 6:05-CV-400, 2007 WL 486633, *6 (M.D. Fla. Feb. 9, 2007) (finding that, although relevant, spoliated evidence was not crucial); *Managed Care Solutions, Inc.,* 736 F. Supp. 2d 1317, 1327-28 (S.D. Fla. 2010) (allegedly spoliated evidence not crucial to plaintiff's claims because it could prove its case through evidence obtained elsewhere).

"Generally, only **outcome determinative** evidence constitutes 'crucial' evidence." *Long v. Celebrity Cruises, Inc.*, No. 12-22807, 2013 WL 12092088 (S.D. Fla. July 31, 2013)

(citing *United States v. McCray*, 345 Fed. Appx. 498, (11th Cir. 2009)) (emphasis added); *see also, e.g., Oil Equipment Company, Inc. v. Modern Welding Company Inc.*, 661 Fed. Appx. 646 (11th Cir. 2016) (spoliator destroyed truck bedding and tank in product liability action alleging defective tank); *Flury*, 427 F.3d 939 (truck with allegedly defective airbags was destroyed).

The Undersigned is far from convinced that the loss of the chair is an outcome determinative event.

Carnival has provided two identical exemplar chairs. In addition, because Carnival discards these chairs after they are damaged, preserving this specific chair would have likely not resulted in any evidence that this specific chair had been repaired before. Under these facts, Plaintiff has not been deprived of the only evidence available to put forth a *prima facie* case of negligence against Carnival.

Finally, as explained below, the Undersigned will permit Plaintiff to put forth trial evidence concerning the missing chair and the circumstances under which it was not available for his inspection. This minimizes any modest prejudice.

<u>Plaintiff Can Present Evidence of the Missing Chair</u>

As outlined above, Weber is not entitled to spoliation sanctions because he has not established bad faith and prejudice. However, the Undersigned will permit him to present evidence to the jury about the missing chair and the underlying background. Of course, if Plaintiff were to pursue this opportunity, then Carnival would be able to

introduce evidence about its explanation for its failure to keep the chair (and could appropriately, and if permitted by Judge Cooke, make argument about its rationale).

Permitting Plaintiff to introduce evidence that Carnival discarded the chair is not tied to the Court's inherent power to impose spoliation sanctions; the Court is empowered to impose **discovery** sanctions even in absence of bad faith. *See EEOC v. Troy State Univ.*, 693 F.2d 1353, 1358 (11th Cir. 1982) (reversing dismissal of the EEOC's lawsuit where the EEOC's failure to comply with Court discovery orders was not in bad faith, and noting that the district court should have considered other available sanctions, such as limiting the EEOC's production of evidence); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994) (holding that under Rule 37, "[a] court may impose lesser sanctions without a showing of willfulness or bad faith on the part of the disobedient party."); *see generally United States Equal Emp. Opportunity Comm'n v. GMRI, Inc.*, No. 15-20561, 2017 WL 5068372, at *26 (S.D. Fla. Nov. 1, 2017).

Permitting Weber to introduce evidence about the missing chair (and permitting Carnival to introduce evidence and make arguments to explain the loss of the chair) is permitted without a bad faith finding. *See United States Equal Emp. Opportunity Comm'n v. Suntrust Bank*, No. 8:12-CV-1325-T-33, 2014 WL 1364982, at *11 (M.D. Fla. Apr. 7, 2014) (allowing the EEOC to introduce evidence at trial of defendant's policies regarding preservation of its surveillance videos and its failure to preserve surveillance video evidence); *Floeter*, 2007 WL 486633, at *7 ("Courts have found that loss of evidence may

11

be relevant and admissible for the jury's consideration, and that adverse inferences arising from such destruction can be argued by counsel in closing."); *Socas v. The Nw. Mut. Life Ins. Co.*, No. 07-20336-CIV, 2010 WL 3894142, at *9 (S.D. Fla. Sept. 30, 2010) (denying the defendant's request for dismissal or adverse inference but noting that "this ruling is not intended to preclude [the defendant] from introducing into evidence the facts concerning this failure to preserve relevant documents."); *Managed Care Sols.*, 736 F. Supp. 2d at 1334 (denying sanctions motion but explaining that "this ruling does not foreclose the possibility that the plaintiff will be able to introduce evidence of the defendant's failure to retain relevant documents at trial.").

In addition, although this dispute does not involve electronically stored information ("ESI") and therefore does not involve Federal Rule of Civil Procedure 37(e) ("Failure to Preserve Electronically Stored Information"), that rule would permit a court to impose measures other than the severe ones mentioned in subdivision (e)(2) without finding that the party responsible for the failure to preserve ESI had the requisite bad faith intent. Thus, the advisory committee notes to the 2015 amendment to Rule 37 (which added the section for sanctions arising from failures to preserve ESI) explain that "subdivision (e)(2) would not prohibit a court from allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision." Fed. R. Civ. P. 37 (advisory committee notes).

## **CONCLUSION**

The Undersigned denies Plaintiff's sanctions motion but provides the alternate, less-severe relief outlined above (which does not require a bad faith finding).

**DONE AND ORDERED** in Chambers, in Miami, Florida, on August 3, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All Counsel of Record